CASE 34—PETITION EQUITY—FEBRUARY 13.

## Stephens, &c., vs. Benton, &c.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. A railroad company made a mortgage to trustees to secure 400 of its bonds for $1,000 each. By mistake the company issued and sold 420, instead of 400 bonds. To each bond was attached a certificate showing that it was secured by mortgage, and that the amount of such bonds, issued and to be issued, was not to exceed $400,000. The holders of the twenty *extra* bonds bought them in ignorance of the over issue. *Held*—That the company is estopped to deny that the twenty extra bonds were secured by the mortgage.

2. Equitable, as well as legal estoppels, bind privies in estate.

3. Such mortgage by estoppel gives the holders of the twenty bonds an equitable lien, which, though unrecorded, is superior to the lien given by unrecorded income bonds, subsequently issued; but inferior to that given by a subsequently recorded mortgage.

4. Where B. purchased *third* mortgage bonds without notice of the over issue, but *with* notice of the income bonds, the holders of the latter will be substituted to the legal advantage which B. acquired by the registration of the third mortgage, and consequently to a preference over the holders of the twenty extra bonds.

M. C. JOHNSON and J. B. BECK, for appellant, cited 2 *Parsons on Contr.* (4th ed)., 340; 1 *Marsh.*, 437; 8 *B. Mon.*, 542; 1 *Story's Eq.*, p. 377; 6 *B. M.*, 113; 10 *B. M.*, 157, 263; 3 *Dana*, 380; 5 *J. J. M.*, 564; 2 *Lead. Cases Eq.*, p. 85, pt. 1; 10 *Peters*, 177.

STEVENSON & MYERS, for appellees, cited 9 *Iowa*, 407; 1 *Selden*, 547; 2 *Wash. Va. Rep.*, 70; 5 *Call.*, 417; 8 *Wend.*, 482; 6 *Hill*, 17; 3 *Hill*, 225; 2 *Hill*, 566; 12 *N. H.*, 128; 5 *Bart.*, 364; 25 *Vermont*, 273; 8 *Conn.*, 554; *Cool on Mortg.*, 335; 17 *Howard*, 615; *Lead. Cases Eq.*, pt. 1, 2 vol. p., 50.

F. K. HUNT on same side.

JUDGE BULLITT DELIVERED THE OPINION OF THE COURT:

The Covington and Lexington Railroad Company executed a mortgage to Stephens and Fearing, trustees, to secure payment of its 400 bonds for $1,000 each, 160 of them bearing six per cent. interest, and 240 of them bearing seven per cent. interest. By mistake, the company issued and sold 420 instead of 400 bonds; namely, 160 six per cent. bonds, and 260 seven per cent.

bonds. Instead of numbering them from 1 to 420, which would have made the mistake manifest, the company numbered each class separately, from 1 to 160, and from 1 to 260. To each bond was attached a certificate of the trustees, stating that the company had mortgaged its property to them "for the use and benefit of the holders of their [its] obligations of similar tenor as the foregoing, issued and to be issued, to an amount not exceeding $400,000," and "that the foregoing is one of the obligations referred to and secured by said deed."

Said company afterward executed a second mortgage to secure other bonds for $1,000,000; and afterward issued and sold certain "income bonds," which contained a pledge of its property for their payment, but were not secured by any recorded instrument; and afterward executed a third mortgage for $600,000.

The property of the company having been sold, under an order of court, to pay its debts, and the proceeds being insufficient to pay them all, the court below intimated an opinion that the holders of all the other bonds were entitled to a preference over the holders of the twenty seven per cent. bonds, numbered from 241 to 260, inclusive. Thereupon Stephens and Fearing, as trustees, and the holders of several of those twenty bonds, filed a cross-petition, claiming a preference over the holders of the "income bonds."

This appeal was taken from an order dismissing that cross-petition.

1. It is contended by the appellants that the mortgage for $400,000, taken in connection with the 420 bonds and the certificates upon them, should, in equity, be construed as a mortgage for $420,000; and that the equitable lien thus given for the extra $20,000 is superior to the subsequent unregistered lien given by the income bonds.

Equity cannot thus vary the legal effect of the mortgage, unless it be for the purpose of carrying into effect the intention of the parties. We find no evidence of an intention to make a mortgage for $420,000. The resolution of the board of directors, referred to in the mortgage, authorized a mortgage for not exceeding $400,000; the mortgage was made to secure

that sum; the certificates upon all the bonds referred to it as a mortgage for that sum; and it is conceded that the twenty extra bonds were issued by mistake, and under the belief that only 400 bonds were issued. It is impossible to deduce from these facts an intention to make a mortgage for $420,000.

2. It is contended that the certificates upon the twenty extra bonds estop the company from denying that they were secured by the mortgage; and that this mortgage by estoppel gives to the holders of those bonds en equitable lien, which, though unrecorded, is superior to the lien given by the unrecorded income bonds subsequently issued.

The facts leave no room for doubt that the holders of the extra bonds purchased them in ignorance of the over issue. It is contended, however, that the numbers upon them, from 241 to 260, gave constructive, if not actual, notice of the over issue, since the mortgage provided for only 240 seven per cent. bonds; and that the purchasers of the extra bonds were guilty of laches in not ascertaining the mistake. But we are of a different opinion. The certificate of the trustees, describing the mortgage, was attached to the bonds for the purpose, we suppose, of obviating the necessity of exhibiting the mortgage to the purchasers of bonds. At any rate, the purchasers were authorized to act upon the assumption that the certificates were true. The certificates did not describe the manner in which the bonds were numbered, nor even refer to the fact that some bore six and some seven per cent. interest; but described them all as being of "similar tenor." Nor could the purchasers of the extra bonds have detected the over issue by examining the mortgage, since it did not describe the manner in which the bonds were numbered. Purchasers had a right to suppose that they were numbered from 1 to 400, as they should have been. If they had been thus numbered, commencing with the six per cent. bonds, the eightieth seven per cent. bond would have borne the number 240.

As the company sold the bonds with those certificates upon them, it cannot deny the statements contained in the certificates, and is therefore estopped to deny that each of the bonds was secured by the mortgage.

What is the effect of this estoppel? It prevents the company from denying the truth of its assertion, and from availing itself of any fact inconsistent with its truth. In equity its effect against the company is the same as if the assertion had been true. It gives to each bond-holder the rights against the company which he would have had if the assertion had been true. The assertion was, that each bond was one of 400 bonds, for $1,000 each, that were secured by a mortgage for $400,000. The estoppel gives to each bond-holder the rights against the company which he would have had if only 400 bonds had been issued. If only 400 bonds had been issued, each holder of them would have had a lien on the property of the company superior to the liens of the subsequent incumbrancers. Against the company, the estoppel gave to the holders of the twenty extra bonds the lien which the mortgage gave to the holders of the 400 bonds therein mentioned.

But, though this lien is as valid against the company as if it had been given by the mortgage, yet, as there was no recorded evidence of it, it must give way to subsequent incumbrancers, without notice, who claim under recorded mortgages.

The equitable lien, however, given by the income bonds, not having been recorded, must yield to the equitable lien previously given by the estoppel to the holders of the twenty extra bonds.

But it is contended that privies in estate cannot be affected by an equitable estoppel; consequently, that, though the company is bound by the estoppel, the income bond-holders cannot be affected by it. No authority is cited in support of this position. It is conceded that legal estoppels bind privies in estate. We perceive no reason for refusing to give the same effect to equitable estoppels, which never arise except to prevent injustice, whilst legal estoppels are frequently inequitable. A, standing by and permitting his property to be sold by B, cannot assert his title against the purchaser. This is an equitable estoppel. If C, having notice of the transaction, should afterward purchase the property from A, can it be doubted that C's claim would be barred by the estoppel? In the case under consideration notice of the estoppel to the income bond-hold-

ers was unnecessary. In a contest between equities, seniority prevails, and notice is immaterial.

It is contended, however, that R. B. Bowler purchased a part of the third mortgage bonds, without notice of the over issue under the first mortgage, though with notice of the income bonds; and that the holders of the income bonds are entitled to be substituted to the legal advantage which Bowler acquired by the registration of the third mortgage, and, consequently, to a preference over the appellants. On the other side, it is contended that there are funds enough to pay the appellants after satisfying Bowler's third mortgage bonds.

The facts that Bowler purchased the third mortgage bonds, and that the appellees purchased the income bonds, without notice of the over issue and for a valuable consideration, are not sufficiently stated in the pleadings to entitle the holders of the income bonds to the benefit of the substitution, even if the law and the facts are as contended for.

On the other hand, the record does not show how much was realized by the sale of the property, nor what will remain after paying the debts preferred over Bowler's third mortgage bonds.

But as the judgment must be reversed, and the parties, upon the return of the cause, should be allowed to amend their pleadings, it is proper to decide the question as to the right of substitution. The case may be conveniently stated thus : The owner of land gives a title bond to A, and a second title bond to B, who has no notice of A's equity, and afterward conveys the legal title to C, who has notice of the equity of B, but no notice of the equity of A. Who is entitled to the land ? As between A and B, A is entitled to it, his being the oldest equity; as between A and C, C is entitled to it, having purchased the legal title without notice of A's equity ; but as between B and C, B is entitled to it, because C had notice of his equity. In such a case our opinion is that B would be entitled to it. If, in an action to which A was not a party, B had recovered the land and obtained a conveyance of the legal title from C, and A should afterward sue B, it seems clear that B, having united the legal title to his junior equity, could not be compelled to

convey to A. The fact that all of them are parties to the action, asserting their respective claims, can make no difference, because the legal title cannot be taken from C, except by virtue of B's equity; if taken from C, it must pass to B; and as it then becomes .united to his junior equity, it cannot be ·taken from him for the benefit of A. Moreover, the chancellor, if necessary, would consider that as having been done which should be done, and would treat the case as if C had conveyed to B, as he was bound to do. Our opinion, therefore, is, that if the income bonds were purchased by the appellees, and the third mortgage bonds by Bowler, for a valuable consideration and without notice of the over issue, the appellees who hold the income bonds are entitled to be substituted to Bowler's rights and to a preference over the appellants.

If there should be a surplus, after paying the amount of those bonds of Bowler, the appellants will be entitled to it in preference to the income bond-holders.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.