GEORGE E. MATTHEWS et al., Appellants, *v.* ASSOCIATED PRESS OF THE STATE OF NEW YORK et al., Respondents.

Defendant a corporation organized under the act "to incorporate the Associated Press of the state of New York" (Chap. 754, Laws of 1867), adopted a by-law prohibiting its members from receiving or publishing "the regular news dispatches of any other news association covering a like territory and organized for a like purpose." A suspension of all the rights and privileges of the association was provided as a penalty for a violation of said provision. In an action to restrain defendant from enforcing this penalty, *held*, that the association had power to enact the by-law; that it was not objectionable either as unreasonable and oppressive, as tending to restrain trade and competition and to create a monopoly, or as an unlawful interference with vested property rights, at least in the absence of evidence that the alleged violation for which the penalty was sought to be enforced grew out of acts in the performance of a contract entered into before the passage of the by-law; nor did it create a restriction upon the liberty of the press.

It appeared that while defendant only appoints and engages agents, in the strict sense of the term, in the state of New York, by virtue of contracts with other associations, it receives from them news collected from the principal portions of the civilized world. Plaintiffs are also members of, and they publish the news received from another press association which collects its news, by its own agents, from substantially the same territory. It did not appear that plaintiffs became members of the other association

before the passage of the by-law. *Held,* that this action of plaintiffs came within the prohibition of the by-law and authorized defendant to enforce the penalty.

Reported below, 61 Hun, 199.

(Argued November 28, 1892; decided January 17, 1893.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made October 23, 1891, which reversed an order of Special Term continuing a preliminary injunction in an action brought by plaintiff to restrain the defendant, the Associated Press of the State of New York and the members of its executive committee, from expelling or suspending the plaintiffs from membership.

The facts, so far as material, are stated in the opinion.

*Charles B. Wheeler* for appellants. The twenty-fifth by-law of the Associated Press of the state of New York is one which the corporation had no authority to adopt, and no right to enforce. (2 Kent's Comm. 296.) The by-law is unreasonable, because it interferes with the common-law rights of property and is in restraint of trade. (*People* v. *Marx,* 99 N. Y. 377; *People* v. *Gillson,* 109 id. 399; *Fisher* v. *Bush,* 35 Hun, 641; *Thomas* v. *M. P. Union,* 49 id. 171; *Hesketh* v. *Braddock,* 3 Burr. 1858; *Dunmakers* v. *Fell,* Willes, 384; *Rex* v. *Coopers Co.,* 7 T. R. 543; 35 Penn. St. 151; *Adley* v. *Reeves,* 2 M. & S. 53; Morawetz on Corp. § 494; Boone on Corp. § 57.) The by-law in question is void because it impairs and destroys vested property rights. (*Kent* v. *Q. M. Co.,* 78 N. Y. 150; *Fisher* v. *Bush,* 35 Hun, 641; *Descroll* v. *W. B. & C. M. Co.,* 59 id. 96–102; *People* v. *B. Society,* 3 Hun, 364.) It is in conflict with the Constitution of the state of New York. (*People ex rel.* v. *S. F. B. Society,* 24 How. Pr. 216.) The by-law in question was designed purely and simply to break down the United Press Association and drive it out of the field as a news agency. Such a by-law in its scope and purposes cannot be regarded with any favor by this court, and ought not to be permitted to be enforced. The plaintiffs by being a member of the Associated

Press did not bind themselves to observe any unlawful
feature of the constitution and by-laws. (*Thomas* v. *M. P.
Union*, 49 Hun, 171; *Sayre* v. *L. U. B. Ass'n*, 1 Duval,
142.)

*S. E. Payne* for respondents.     The law under which
defendants were incorporated (Chap. 754, Laws of 1867)
gave the defendants the right clearly to make this by-law.
(*Kent* v. *Q. Co.*, 78 N. Y. 159; *Fisher* v. *Bush*, 35 Hun,
641; *Driscoll* v. *B. & C. M. Co.*, 59 N. Y. 96; *Arnot* v.
*P. & E. C. Co.*, 68 id. 558; *Hodge* v. *Sloan*, 107 id. 244;
*Leslie* v. *Lorrillard*, Id. 519.)     Defendants have agreed to
furnish the plaintiffs all their news dispatches, and plaintiffs
have agreed to buy news dispatches of no one else who is a rival.
Such an agreement is not in restraint of trade and is not void
from public policy.     Plaintiffs are not in a position to call upon
the equity powers of this court for an injunction, on the
ground that this by-law which is no more or less than a con-
tract between the parties, is *ultra vires*.     The plaintiffs have
enjoyed the benefit of this by-law for many years, and retain-
ing the benefit they are estopped.     (*D. M. Co.* v. *Roeber*, 106
N. Y. 473.)

Peckham, J.     The plaintiffs-appellants herein procured at
Special Term an injunction against the defendant, The Asso-
ciated Press, etc., restraining it from suspending the plaintiffs
from any of the rights or privileges of or in the Associated
Press and from withholding from the plaintiffs (who are
printers and publishers of newspapers at Buffalo in this state),
the regular telegraphic news and reports procured and fur-
nished by the Associated Press to its members, for or on
account of any alleged violation by the plaintiffs of the pro-
visions of the twenty-fifth by-law of the association.     The
plaintiffs are members of the association.     Upon appeal from
the order granting the injunction the General Term reversed
the same upon the ground that the action to obtain a perma-
nent injunction could not be maintained upon the facts set

forth in the complaint and affidavits.  The plaintiffs appealed from the order of reversal to this court.

The record shows that the defendant, the Associated Press of the State of New York, was incorporated by virtue of an act of the legislature of this state, passed April 24, 1867 (Chap. 754, of the Laws of that year), and entitled " An act to incorporate the Associated Press of the State of New York."   In the act the objects of the association are stated "to be the mutual protection of members of the press, procuring and supplying its members with telegraphic news, upholding and elevating the character and standing, and the promotion and maintenance of the general interest of the profession and its members."

Some time subsequent to its formation the defendant adopted a by-law known as number twenty-five, a part of which is as follows:  " 25. No member of this association shall receive or publish the regular news dispatches of any other news association covering a like territory and organized for a like purpose with this association."   The by-law then proceeds to provide a penalty for the violation of this provision in the form of a suspension of all the rights and privileges of the association, after an opportunity has been given the accused party to be heard.

It also appears from the complaint that there is an United Press Association which is organized and engaged in procuring and supplying its members with telegraphic news from various parts of the world, and the plaintiffs are members thereof, and by means of its reports and dispatches furnished to them the plaintiffs receive and publish in their newspapers other and different telegraphic news from different parts of the world than that procured and furnished by the defendant corporation, and the plaintiffs are thus enabled to increase the reading matter published in their newspapers and to give fuller and more complete telegraphic news of matters of general and public interest than plaintiffs would otherwise be enabled to do by publishing only the regular news and dispatches of the corporation defendant.   The plaintiffs allege

that the United Press Association is not one which covers a like territory and that it is not organized for a like purpose with the defendant corporation within the meaning of the by-law in question, but that it covers a far wider territory and is organized for a more extended purpose. It is alleged that the defendant corporation only has agents for the collection of news within the state of New York and that the news which it procures from other portions of the world is collected by other news or press agencies and delivered to the defendant corporation under contracts made by it, whereas the United Press Association has agencies for the direct collection of news for it from various parts of the world, outside as well as inside the state of New York. It is alleged that the defendant corporation is about to enforce the above-mentioned twenty-fifth by-law as against the plaintiffs on account of the receipt and publication by the plaintiffs of the news and telegraphic dispatches collected and sent to them by the United Press Association. The membership in the United Press Association and also in the defendant corporation is a valuable property right.

The plaintiffs upon the argument of the appeal here have raised two questions: (1). Whether the by-law in fact prohibits the receipt and publication by them of the dispatches of the United Press Association; (2), if it do, whether it is legal and enforcible.

As to the first question :

I think the by-law does in fact prohibit such receipt and publication, because the United Press Association covers a like territory and is organized for a like purpose with the defendant corporation.

There is no limit in the charter or act of incorporation of the defendant by which it is confined to any particular territory in the procuring and supplying of its members with telegraphic news. The act leaves it entire freedom to obtain such supply from the whole world. There is no by-law which has been called to our attention that imposes any limit. As there is neither charter nor by-law which limits the territory that

the defendant corporation may cover in the execution of its object and purpose, so the record discloses no limitation in that territory arising from the practice of the corporation. It in truth obtains, serves and supplies its members with news from all over the world. It accomplishes this object in different ways; sometimes directly by means of agents strictly so called, and at other times by means of contracts through or with other news agencies which themselves directly employ agents for the collection of news. In this way the defendant corporation secures news from all over the world and supplies it to its members.

The fact that the defendant appoints and engages agents in the strict sense of the term only within and for the state of New York is not conclusive proof that its territory for collecting news is limited to that state. The record shows that it performs the purpose of its incorporation, not alone by obtaining news from these so-called agents, but that by virtue of contracts entered into by it with other associations, it contracts to and does receive from them the news which they collect from the principal portions of the civilized world, and in thus contracting for the supply of, and the receiving such news, the association or associations with which such contracts are made, are thereby and for that purpose, and to that extent constituted the agents of the defendant corporation. In that way it is covering a vast territory and it is thereby fulfilling the object of its incorporation — the procuring and supplying its members with telegraphic news.

Through its own agents and by virtue of its contracts with other press associations the defendant corporation achieves the collection and supplying of news to its members, which has been collected from substantially the same territory over which the United Press Association has collected its news. It is plain that the result is that both associations cover the same territory.

I also think it plain that the United Press Association is organized for a like purpose with the defendant corporation. The plaintiffs controvert this view on the ground, as they

allege, that the United Press is organized for a more extended purpose, and this alleged fact is based upon the further allegation that the United Press has agencies for the direct collection of news for it from various parts of the world outside as well as inside the state of New York, while the defendant corporation only has agents for the collection of its news within the state of New York, and all its other news comes to it through contracts with news or press associations or other agencies, and is thus delivered to the defendant corporation. In this view of the two associations I see no difference of purpose.  Both are securing news from all parts of the world and such is the object of both.  One secures its object by directly appointing or employing so-called agents, while the other secures its object by direct agencies in some cases of limited territorial area and in other cases by contracts with other press or news agencies covering a large territory.  The purpose of each is the same and the result in each case is the same.  Each supplies the news to its members and each has obtained it from a territory bounded only by civilization itself.

The fact that plaintiffs by using the United Press Association are thereby enabled to publish different and more full and complete telegraphic news does not alter the other fact that the two associations are organized as stated for the same purpose and that they cover the same territory.

(2.) As to the second question :   I think the by-law is valid and enforcible.

The plaintiffs allege that it is beyond the power of the association to enact; that it is unreasonable and oppressive; that it tends and was expressly intended to restrain trade and competition and to create a monopoly ; that it is an unlawful interference  with  vested  property  rights  and  impairs  a member's right to contract; that it creates a restriction upon the liberty of the press.  None of these objections strikes us as having force.  The first ground taken, that it is beyond the power of the company to pass such a by-law, depends for its correctness upon the conclusions arrived at respecting the validity of the other grounds.  If the by-law be unreasonable

or oppressive, or if it tend improperly to restrain trade and thereby to create a monopoly, or if it be an unlawful interference with a member's right to contract, or if it restrict the liberty of the press, in all or any of these cases the by-law would be beyond the power of the company to adopt or pass and it would be illegal. The assertion in the moving papers that the by-law tends and was intended to restrain trade, does not in any way affect the question. The court must itself construe the by-law and must decide as to its tendency, while the intention with which it was passed by those voting for it is entirely immaterial upon this aspect of the case.

We do not think the by-law improperly tends to restrain trade, assuming that the business of collecting and distributing news would come within the definition of a trade. The latest decisions of courts in this country and in England show a strong tendency to very greatly circumscribe and narrow the doctrine of avoiding contracts in restraint of trade. The courts do not go to the length of saying that contracts which they now would say are in restraint of trade are, nevertheless, valid contracts, and to be enforced; they do, however, now hold many contracts not open to the objection that they are in restraint of trade which a few years back would have been avoided on that sole ground, both here and in England. The cases in this court which are the latest manifestations of the turn in the tide are cited in the opinion in this case at General Term, and are *Diamond Match Co.* v. *Roeber* (105 N. Y. 73); *Hodge* v. *Neill* (107 id. 244); *Leslie* v. *Lorrillard* (110 id. 519).

So that when we agree that a by-law which is in restraint of trade is void, we are still brought back to the question what is a restraint of trade in the modern definition of that term? The authority to make by-laws must also be limited by the scope and purpose of the association. I think this by-law is thus limited and that it is not in restraint of trade as the courts now interpret that phrase. Some of the grounds showing the reasonableness of the by-law are well and clearly set forth in the opinion delivered by the learned judge at the General Term. Here are a number of persons who are owners of or

interested in various newspapers in the state outside of the
city of New York.   They enter into business relations with
each other, to a certain extent, through the form of an organi-
zation known as a corporation, and for the purpose, among
others, of collecting and supplying themselves with telegraphic
news.   The greater the number belonging to the organization the
larger will be its income and the greater amount it will be able
to spend for making the collection of news and the more effi-
cient and valuable such collection will be.   To suppress com-
petition in such chosen field among themselves and to thus
enhance the value of the property and the conveniences arising
from the extended use of the means and opportunities of the
association, it would seem most appropriate to provide that the
members of such association should not take news from any
other.   The division of the business among two or more asso-
ciations tends directly towards the making of the membership
in each less valuable than it otherwise would be, and the mem-
bership being less valuable the association itself would tend to
decrease in members and to grow less efficient in service and
less capable of fulfilling promptly one of the great objects of
its existence, the procuring and supplying of news to its mem-
bers.   Thus a by-law of the nature complained of would have
a tendency to strengthen the association and to render it more
capable of filling the duty it was incorporated to perform.   A
business partnership could provide that none of its members
should attend to any business other than that of the partner-
ship, and that each partner who came in must agree not to do
any other business and must give up all such business as he
had theretofore done.   Such an agreement would not be in
restraint of trade, although its direct effect might be to restrain
to some extent the trade which had been done.

It seems to me this by-law is a natural and reasonable
restraint upon the members of the association, appropriately
regulating their conduct as members thereof with respect to
the business which the association was specially organized and
incorporated to transact.   Its success must greatly depend
upon the number of its members and that in its turn must

depend upon the efficiency, reliability and promptness with which it collects and distributes its news.

This by-law, I think, plainly tends to aid the association in the accomplishment of this object.

As to the objection that the by-law restricts the liberty of the press, I think there is no force whatever to it. For the purpose of efficiently conducting the business of procuring and supplying the news to its members, the association provides that no one of its members shall take or publish news from any other association. In what way the liberty of the press is in the least degree restricted by such by-law, I am unable to see. The constitutional provision regarding the liberty of speech and of the press has nothing whatever to do with such a provision, and no argument can make it plainer than does the reading of the constitutional provision itself.

The ground that the by-law interferes with a vested interest in property, does not appear by these papers.

If the by-law were passed before any member of the association had become a member of the United Press Association, then clearly there would be no interference with vested rights of property in the latter association. The papers do show that the by-law was not passed until subsequent to the time when the United Press Association came into existence, but they do not show that at the time of its passage either or any of the plaintiffs had become members of the United Press Association.

We do not, therefore, intend to decide in this case as it now stands that one who had already and legally become a member of the United Press Association before the passage of the by-law in question, could thereby be unfavorably affected in the assertion of his right of membership in the United Press Association, or placed in the position of availing himself of its privileges at the risk of suspension or expulsion from the association adopting the by-law.

A by-law which disturbs a vested right may not be valid. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 182, 183 ; 1 Morawetz on Corp. § 496.) And although a corporation may

have the power to adopt by-laws, yet one of its members who acts upon a subject not touched by any by-law, might perhaps claim that a subsequent by-law upon the subject, which if valid as to him, would practically render valueless a portion of his property, should not as to him be so treated or regarded. (See also *Wynehamer* v. *People*, 13 N. Y. 378.) We do not decide this proposition for the reason that it is not before us.

The grounds in opposition to the by-law, which have been discussed, we think are unavailing, and the orders of the General Term reversing the orders refusing to dissolve the injunction should be affirmed, with costs.

All concur.

Orders affirmed.