## COX et al. v. GOVERNMENT EMPLOYEES INS. CO.

### No. 8916.

Circuit Court of Appeals, Sixth Circuit.

March 10, 1942.

James E. Fahey, of Louisville, Ky. (Woodward, Dawson & Hobson, of Louisville, Ky., on the brief), for appellants.

Charles W. Morris, of Louisville, Ky. (Morris, Garlove & Goldsmith, of Louisville, Ky., on the brief), for appellee.

Before ALLEN, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The appellants, James P. Cox and Waverly Stader, obtained judgments in a Kentucky state court against William G. Hare, a private in the United States Army, for damages for personal injuries caused by the negligence of the soldier in operating an automobile.

The appellee, Government Employees Insurance Company, filed a declaratory judgment suit in the United States District Court for the Western District of Kentucky against appellants and the soldier, invoking the judgment of the court that the soldier was not an insured by virtue of the terms of a policy of automobile liability insurance issued by appellee to "Machine Gun Troop, 13th Cavalry," in which Hare was an enlisted man; and that, there-

fore, appellee was not obligated to pay the judgments awarded against the soldier.

Appellants, by answer and counterclaim asserted that the appellant insurer is legally liable for the payment of their judgments recovered against Hare in the state court.

The District Court entered declaratory judgment that the appellee insurance company, under the terms of its policy, is not liable to appellants or to the soldier, and dismissed the counterclaim.

At the time of the accident in which appellants were injured, the Machine Gun Troop of the 13th Cavalry was stationed at Fort Knox, Kentucky. Each enlisted man drew Army pay, was furnished clothing and sleeping quarters, and allotted a daily ration in money which, for convenience, was paid collectively to each troop. Meals for all men in the troop were provided from this ration fund.

A commissary, under supervision of the post Commander, was maintained to sell to the soldiers, for cash, various and sundry articles not furnished by the Army. Profits from the commissary were, at the end of each month, divided equally among the troops in the regiment and paid as separate dividends to each troop, for the use and benefit of its membership. Each Troop Commander served as treasurer of both the commissary profit fund and the ration fund for his troop. The surplus in the troop fund was used for recreation and additional conveniences for the troopers.

From the surplus money in its troop fund, the Machine Gun Troop purchased a light half-ton truck, for the use and additional convenience of the troop and its members. Simultaneously, an insurance policy, covering liability and property damage caused by the operation of the truck, was procured from the appellee company; the premium for which, amounting to $38.-25, was paid from the troop fund.

The policy of insurance was issued to Machine Gun Troop, 13th Cavalry, as named insured, and provided that, within the stipulated limits of the policy, the insurer would pay on behalf of the insured all sums which the latter should become obligated to pay by reason of legal liability for damages for bodily injuries to persons, when such injuries were caused by accident and arose from the ownership, maintenance, or use of the automobile. The policy also contained a like coverage of liability for damage to property.

"Government Service" was stated in the policy as the business occupation of the named insured; and the purposes for which the automobile was to be used were termed "Commercial." The term "commercial," however, was defined as the transportation or delivery of goods or merchandise and other business uses in connection with the insured's business occupation, "including occasional pleasure use for the named insured and family." In defining the "Insured," the policy provided that the unqualified word "Insured" should include not only the named insured but also any person while using the automobile and any person or organization legally responsible for its use, "provided that the declared and actual use of the automobile is 'pleasure and business' or 'commercial,' each as defined herein, and provided further that the actual use is with the permission of the named Insured."

From the time of the purchase of the truck continuously to the date of the accident, Private Hare was the regular driver of the truck for the Machine Gun Troop. The Commanding Officer of the Troop had instructed him to clean, service and care for the truck and to use it on all authorized missions, but not at any other time. During drill hours, the truck was kept in the troop area, and at night in the Regimental Motor Park.

On December 3, 1938, the Captain of the Machine Gun Troop instructed Private Hare to take the truck to Pine Grove, Kentucky, for servicing. The order was obeyed and Hare returned to Troop Headquarters between the hours of 3:30 and 4 P. M. He retained the keys; and, around dusk, after eating his evening meal, took the truck without permission and, accompanied by a Corporal and another private of the same troop, drove first to one roadhouse and then to another in Elizabethtown, Kentucky. His voyage was for entirely personal purposes, wholly unrelated to any official business or general entertainment of the troop. Hare had not received permission from his Captain, Lieutenant, First Sergeant, Supply Sergeant, Mess Sergeant, or any other superior officer, to use the truck for the purposes to which he put it. He had never had permission to use the truck for his own personal benefit on any occasion.

While driving the truck back to the Army post on the highway from Elizabethtown, Private Hare was responsible for the ac-

cident which resulted in the judgments rendered against him in the Kentucky state court.

The Machine Gun Troop was not incorporated, nor was there any written contract or agreement among its members. It purchased the truck in strict compliance with Army regulations; and paid, out of the troop fund, for the repairs and general upkeep of the truck, and for the gas used by it. Army regulations required that when an enlisted man should be transferred to another troop, the amount of surplus money in the troop fund should be computed and his proportionate share transferred, with him, to the troop fund of his new troop.

The Machine Gun Troop of the 13th Cavalry was composed of 175 men. The truck which it purchased was used to transport the property and the members of the troop for troop purposes, and occasionally to transport troop members to and from entertainments and athletic events.

In rendering judgment for the appellee, the district court held that Private Hare was not a "named insured" in or under the policy issued to "Machine Gun Troop, 13th Cavalry"; that his right as a member of the troop to the joint use and enjoyment of the truck was subject to the binding rules and regulations of the troop; and that, at the time of the accident, he was not a party covered by the policy, inasmuch as he was not operating the truck with the knowledge, permission, or consent of the named insured. In our opinion, the judgment of the district court was correct.

■ It is true, as contended by appellants, that where there is room for more than one interpretation, that most favorable to the insured will be adopted. Cheek v. Commonwealth Life Ins. Co., 277 Ky. 677, 686, 126 S.W.2d 1084.

However, in Equitable Life Assurance Society v. Hall, 253 Ky. 450, page 455, 69 S.W.2d 977, page 979, where it was held that one who sues on a contract made for his benefit must accept the contract as made, the Kentucky Court said: "It is a well-settled rule that, in case of ambiguity or uncertainty, that rule more favorable to the insured will be adopted. But it is also true that a policy is interpreted according to its plain meaning giving effect to all provisions. Haselden v. Home Ins. Co. of N. Y., 247 Ky. 530, 57 S.W.2d 459. The rule of liberal construction does not au-

thorize a perversion of language or the exercise of invented powers. for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties, by adding to, or striking from, the conditions of the policy." See to the same effect Sun Indemnity Co. v. Dulaney, 264 Ky. 112, 120, 89 S.W.2d 307; Fidelity & Casualty Co. v. Bynum, 221 Ky. 450, 298 S.W. 1080; Brotherhood of Railroad Trainmen v. Wilkins, 257 Ky. 331, 78 S.W.2d 6. Compare Williams v. Union Central Life Ins. Co., 291 U.S. 170, 180, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693.

■ The insured, Machine Gun Troop, 13th Cavalry, was an unincorporated association. As such, it had no legal entity distinct from that of the persons comprising it. Each member of the associated group did possess legal entity. The legal entity of the group was comprised of the collective legal entities of its members. An action at law was probably not maintainable in the association name, but could be brought through the collective legal entities of the persons comprising the association. Moffat Tunnel League v. United States, 289 U.S. 113, 53 S.Ct. 543, 77 L.Ed. 1069; Nichols v. Bardwell Lodge No. 179 I. O. O. F., 105 Ky. 168, 48 S.W. 426.

A person who enters into a contract with an unincorporated association is, of course, legally liable for the fulfillment of his undertakings under the contract.

■ Generally, individual members of unincorporated associations are liable for the contracts and undertakings of the association; but an individual member of a mutual benefit association, not organized for gain or profit, is not liable for the debts and obligations of the association, unless he authorizes or ratifies the transactions out of which the obligations or contracts arose. Brady v. Mutual Benefit Department of the Order of Railway Conductors of America, 215 Ky. 177, 178, 179, 284 S.W. 1045.

■ It is the settled law of Kentucky that voluntary associations may adopt reasonable rules for the government of their membership and may enforce compliance therewith. Louisville Board of Fire Underwriters v. Johnson, 133 Ky. 797, 810, 119 S.W. 153, 24 L.R.A.,N.S., 153; Booker & Kinnaird v. Louisville Board of Fire Underwriters, 188 Ky. 771, 780, 224 S.W. 451, 21 A.L.R. 531.

Each member of the insured Machine Gun Troop was limited to use and enjoyment of the truck for the common purpose for which it was purchased, and was subject to restrictions imposed by Army regulations and the orders of officers within the scope of their military jurisdiction.

The members of the troop were not legally accountable for unlawful use of the truck by one of their number. A voluntary association is not liable for the tort of a member when perpetrated beyond the scope of its control over his acts. Compare Guy v. Donald, 203 U.S. 399, 27 S.Ct. 63, 51 L.Ed. 245.

The policy under interpretation provided distinctly that the actual use of the truck should be with the permission of the named insured. The judgments awarded against Private Hare were resultant from his use of the truck without permission of the named insured. It is manifest that Private Hare caused the personal injuries of appellants from his use of the truck for his own personal purposes, in violation of troop regulations and contrary to the command of his superior officers. He is, therefore, not entitled to indemnity under the insurance policy issued to the Machine Gun Troop. The liability of the appellee insurer to appellants does not reach beyond its liability to Hare.

The judgment of the district court is affirmed.