## Norfolk & W. Ry. Co. v. Harris.
### (Decided June 18, 1935.)

W. R. McCOY, HOLT & HOLT and F. M. RIVINUS for appellant.

JASPER H. PREECE for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal requires a review and a consideration of a claim for loss of wages of G. D. Harris, a section laborer against the Norfolk & Western Railway Company. The basis of the claim is that he was wrongfully discharged from services, and that he is entitled to wages during the period of discharge, and that his seniority rights were disregarded after he was restored to his employment and returned thereunder to the services of the railway company. He entered the employment of the railway company in 1925, and performed the service of ''way worker'' until his discharge in March, 1932. His services were performed as directed by, and under

the supervision of, a section boss. For a period of time next before his discharge, he was assigned to the work of "day ashman," in which he was engaged at the time of his discharge. The agreement between the railway company and the Brotherhood of Maintenance of Way Workers embraces the rules governing the hours of service and working conditions in the maintenance of the way department. Section 4 thereof states the rule of discipline and grievances and provides that "an employee dismissed shall upon making a written request * * * be given an investigation at which investigation he may be represented by representative of his choice. * * * If the charge against the employee is not sustained, it shall be stricken from the record and employee reinstated and paid for the assigned working hours actually lost, less the amount earned from time of suspension until reinstated. The right of appeal through the regular channels is accorded."

It is agreed that the constitution and by-laws of the Brotherhood of Maintenance of Way Workers provide tribunals with authority to hear and determine grievances and the rights of employees. And if on such trial the ruling is adverse to him, an appeal lies to a board, composed of the president of the organization and the executive board, and in further meritorious cases, he has the privilege to appeal under the Federal Railway Labor Act of May 20, 1926, 44 Stat. 577 (see 45 USCA sec. 151 et seq.).

Harris exercised his right of appeal from the act of the railway company discharging him, which, on being tried, was determined adversely to him. He chose as his representative at this trial, C. E. Vance, the general chairman of the brotherhood who represented him on the appeal from the act of the railroad dismissing him. After he lost on his appeal, on account of his financial condition and the needs of his family, Vance made a special, personal plea in Harris' behalf, to Angeline, assistant superintendent of the division on which Harris worked, which resulted in a settlement or compromise of Harris' case, of which he was notified by Vance. Harris thereafter by letter, addressed to Vance, stated, "the settlement without pay as you made in Angeline's office meets with my approval, as I figured you did the best you could in settling this without pay and I don't care to lose it. * * *"

Angeline, on May 12, 1932, in a letter addressed to Vance, stated:

"It is understood that Harris will not be paid for any time lost between March 19th and April 20th, when he was notified to return to work." "I wrote Mr. Porter on the 18th to put G. D. Harris back to work without any change in his seniority. * * * I put him back on account of sympathy for his family and I hope he will work and protect his job without any further trouble."

Harris admits that on or about 20th of April, he was directed to report on the next morning for work. In a conversation with section foreman Williamson, Harris stated that he was returning, not "expecting to work because they had notified" him "that the job (of 'day ashman') was suspended"; that he "would report with that understanding." He failed to report for work on the 21st. On the morning of the 25th, he did so under protest. From the morning of the 25th of April he worked until the 14th day of July, when he asked the foreman to allow him to be "off" the following day. Thereafter he did not report for, or engage in, the services of the railway company.

The work of the "day ashman" was seven days a week, while the general work of the "way workers" to which Harris, after his return to work, was assigned, was 5½ days a week. He asserts the right to recover at the rate of $2.88 a day, for the difference between 5½ days and 7 days a week, during the month of April; 8 days in May; 10 in June; 5½ in July; and full time for 20½ in August; 20½ in September; 28½ in October; 25 in November; 29 in December; 28½ in January, 1933; 26 in February, 1933; 29 in March, 1933; and 14½ in April, 1933, totaling $690.24.

Harris' view was, and he is here so insisting, that the settlement or compromise restored his seniority rights, and that these rights gave him the right to demand the job of "day ashman." The railway company disagreed with him and the officials of the brotherhood concur in the railway company's contention. The railway company pleads as its chief defense that the exclusive jurisdiction was in the tribunals of the brotherhood to interpret, construe and determine according to its constitution, by-laws and its agreement with the railway

company, the term "seniority" as it is here used, and that Harris' failure to have it interpreted, construed, and determined through the channels of the brotherhood was, and is, a complete bar of his action to recover of it the sum sued for.

It will be observed that, notwithstanding he was restored to his seniority rights upon the condition that he was not to be paid for any time lost between March 19th and April 20th, when he was notified to "return to work," he has sued to recover therefor; also, for the time expiring after he voluntarily quit the service, July 14th. It must be noted that at the time of his statement to Williamson he had information the job of "day ashman" had been abolished, and that he was intending to report under protest on this account; that he immediately began to contend that the settlement or compromise made by Vance and Angeline enitled him not only to his seniority rights, but to the particular job of "day ashman." If his seniority rights entitled him to choose the job of "day ashman," independent of the authority of the foreman under whom he worked, and the railway company arbitrarily refused to recognize his right to this particular job, such action on its part was in effect a disregard of his seniority rights. Thus, therefore, when it denied his right to the job of "day ashman," there was thereby raised between him and the railway company an issue not theretofore settled by the compromise made by Vance and Angeline, for trial by the tribunals of the brotherhood.

A review of the evidence bearing on the classification of the work of the waymen discloses no contradiction. Vance, his representative who secured the settlement or compromise for him, and J. R. Worth, secretary and treasurer of the brotherhood, depose the work of the "way maintenance men" was classified as general or maintenance work, all of which was under the supervision and subject to the assignment of the foreman or section boss. And the foreman directed his men in the work and designated what work they were to, and should, do; that there is no distinction in the various kinds of work on the section, and that Harris was not entitled because of his seniority to preference of jobs, or to the job of "day ashman." The assignment of the men to the various kinds of work within the classification was entirely with the foreman. It was

within his discretion to pick out the men best suited for the particular work and assign them, according to their knowledge and experience, to do certain kinds of work.

It cannot be disputed that the constitution and by-laws of the brotherhood and its agreement with the railway company provide the exclusive machinery for the hearing and determining the subject here presented, and that an employee who is denied his claim by these tribunals is accorded a right of an appeal to the authority created by, and existing under, 44 Stat. 577, Federal Railway Labor Act, 1926 (see 45 USCA sec. 151 et seq.).

The regulations of the brotherhood and its agreement with the railway company are the sources of ascertainment of the rights of the individual employees who are members of the brotherhood and the usage upon which the individual contract of employment is based.

Harris' right to seniority both before and after his dismissal was not contractual, nor a matter of natural right. It did not arise out of his employment by the railway company, except as provided by the contract it had entered into with the brotherhood and the latter's rules or usages in relation thereto. Hudson v. C., N. O. & T. P. Ry. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A. (N. S.) 184, Ann. Cas. 1915B, 98; Aulich v Craigmyle, 248 Ky. 676, 59 S. W. (2d) 560; Donovan v. Travers et al., 285 Mass. 167, 188 N. E. 705; Ryan v. N. Y. Central Ry. Co., 267 Mich. 202, 255 N. W. 365; Cousins v. Pullman Co. (Tex. Civ. App.) 72 S. W. (2d) 356; St. L., B. & Mex. Ry. Co. v. Booker (Tex. Civ. App.) 5 S. W. (2d) 856.

Harris had the right to abandon or quit the railway company's service when he chose, either with or without cause, and, of course, the railway company had the reciprocal right to discharge him subject to his right to appeal to the tribunals of the brotherhood for a review of the act of the railway company.

It is admitted that after he returned and resumed work under protest he did not present to the tribunals of the brotherhood the disagreement between him and the railway company as to his seniority rights entitling him to choose the work of the "day ashman," independent of the supervision of the section boss. The

determination of this highly technical question inevitably involves the interpretation and application of the agreement of the brotherhood and the railway company, and whether his right to choose for himself the job of "day ashman" is a contractual fact, obligation, or usage binding and enforceable against the railway company. It is true he carried the dispute as to his dismissal before the authorities of his organization. It is equally as true that after his restoration to his seniority rights, he then began for the first time to interpret the term "seniority" to mean that it entitled him to a particular job. His returning to work and engaging therein under protest, and at the same time asserting his seniority rights to the job of "day ashman," did not relieve him of the duty of appealing to the constituted authorities of the brotherhood for an adjudication and determination of his seniority rights to this particular job, nor authorize him to disregard his obligation to appeal to the authorities of the brotherhood for a determination of this disputed issue between him and the railway company, before resorting to the civil courts for that purpose, if it be conceded he may do so at all. Fish v. Huddell, 60 App. D. C. 263, 51 F. (2d) 319; Yazoo & M. V. R. R. Co. v. Sideboard, 161 Miss. 4, 133 So. 669; Malloy v. Carroll, 272 Mass. 524, 172 N. E. 790; State ex rel. Smith v. Kanawha County Court, 78 W. Va. 168, 88 S. E. 662, 20 A. L. R. 1030. Aulich v. Craigmyle, supra.

The courts are agreed that it is not within their province to inquire into and determine the expediency, practicability, or wisdom of the constitution and by-laws of such organization as the Brotherhood of Maintenance of Way Workers; nor interpret and construe them or to assume and exercise jurisdiction appertaining thereto so long as their interpretation and construction by the brotherhood are not fraudulent, arbitrary, or capricious, or do not trespass upon, or destroy the property or contractual rights of its members, or transgress the bounds of reason or contravene public policy or the laws of the land. Aulich v. Craigmyle, and State ex rel. Smith v. Kanawha County Court, supra. To adopt and apply any other rule would necessarily destroy uniformity of definition and application of the regulations of the organization governing the rights of the members of the brotherhood, and entrely disregard the

procedure and tribunals provided for in its constitution, by-laws, and the agreement with the railway company. It is apparent that different courts might, and would, adopt different meanings of its constitution, by-laws, and agreement, as they affect the members of the brotherhood, and oftentimes different from those which the brotherhood, itself, would give them.

Harris was without right to resort to the courts to have interpreted his seniority rights to the position of "day ashman," so long as he and the railway company disagreed as to the interpretation and application of the term. By express agreement he was not entitled to the loss of wages incurred during the period of his discharge. Having voluntarily abandoned the services of the railway company in July, he was not entitled to recover wages which he did not thereafter earn during the period of his voluntary abandonment of the services. To allow him to recover the difference between the wages he received and those of the "day ashman" as he claims, between the date of his return until he quit the service of the railway company of his own accord, would inevitably require us to adopt his construction of the term "seniority rights" and at the same time disregard that of the railway company and the officers of the brotherhood who have testified herein; also, place us in the position of assuming jurisdiction over a dispute between him and the railway company which, by its and the brotherhood's agreement, is exclusively triable by the tribunals of the latter.

It is apparent that it is our view the court erroneously declined to direct a verdict for the railway company. Other issues are discussed in the briefs of the parties, but, entertaining the views we have expressed, it is unnecessary to consider them.

The judgment is reversed for proceedings consistent herewith.