## Frogge v. Commonweatlh.

Feb. 25, 1944.

C. B. Upton for appellant.

Eldon S. Dummit, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellant, Everett Frogge, was convicted in the McCreary circuit court of the crime of rape, his victim being Thelma Miller, who was under sixteen years of age at the time of the commission of the offense, which was July 3, 1942. The punishment fixed by the jury was confinement in the penitentiary for ten years. Appellant's motion for a new trial was overruled and from the judgment pronounced on the verdict he prosecutes this appeal, relying on a number of errors, most of which are well founded, but we deem it unnecessary to discuss or determine but one of them, which is alone abundantly sufficient to compel a reversal of the judgment. That error is, the erroneous admission of an alleged dying declaration of the prosecutrix whereby she attempted to charge defendant with the commission of the rape of which he is accused.

The families of the immediate parties concerned resided near each other in the suburbs or close to the town of Pine Knot in McCreary County. No steps whatever were taken to apprehend and punish defendant for his crime by any one prior to the return of the indictment against him in March, 1943 when the first in-

dictment returned charged defendant with carnal knowledge of a female under sixteen years of age. It was later quashed and a new indictment made the following May charging defendant with the crime of rape, under which he was tried and convicted.

Sometime in the early part of January, 1943, prosecutrix became ill, but there is nothing in the record to even indicate the nature of her affliction, unless it was premature childbirth. However, it grew so serious that her parents concluded to place her in a hospital at Danville, Kentucky, for treatment, which was done on February 14, 1943, where she died three days later on the 17th day of that month. Her father rode in the ambulance in which she was conveyed to the hospital, there being only the two and the driver of the ambulance who made the trip. The father testified that during the trip to the hospital prosecutrix said to him: "Daddy, I am bound to die. I am going to die, just take me back home." On being asked to tell just what she said after making the above statement witness answered: "I will tell you as near as I can. I cannot recollect whether she said, 'He mistreated me,' or whether she said, 'He raped me and killed me;' it was one or the other and I am not sure." Witness was then asked: "Now tell just what she said," to which he answered: "That was all she said any more than what she told there that while she was sitting on the wood waiting for Pauline, she came upon the hill and throwed her wood down in the haul road and sat down on her wood, and while she was sitting there Everett Frogge slipped up behind her and jerked her off the wood into the road backwards and forced her into what she was forced into, and she said, 'Daddy, I cannot live.' That is as near as I can tell you."

Witness was then asked whether or not his daughter ever expressed any hope of recovery between that conversation and her death, to which he gave a negative answer. All of that testimony was objected to by counsel for defendant but which the court overruled and exceptions were reserved. After the witness finished his testimony defendant's counsel moved to exclude from the jury the alleged dying declaration of the prosecutrix, which was also overruled with exceptions.

The mother of prosecutrix testified that her daughter on the afternoon of July 3, 1942, returned from a

mission of procuring stove wood, accompanied by her 13 year old sister, Pauline Miller, who had been engaged on the same mission, and when she returned her hair was disheveled and she was crying; also that some of her clothing was torn, but witness did not testify,— as we interpret her evidence—that the prosecutrix preferred any charge at that time against defendant. But however that may be, witness in giving her testimony with reference to the later illness of her daughter said: "When she was so sick she said, 'Momma, I am going to die, I cannot get well, and Everett Frogge has killed me * * *. Go get the doctor as soon as you can for I don't guess I will last long, I am bound to die and Everett Frogge is the cause.' " She then narrated, in response to a question, what her daughter had told her concerning the commission of the crime by defendant while she was out gathering stove wood with her accompanying sister, in which witness stated: "She said he mistreated her and had intercourse with her." To all of that testimony counsel for defendant objected which the court overruled with exceptions. A similar motion to exclude that testimony was also overruled and exceptions reserved. That testimony, as so given by the two parents of defendant's alleged victim, was admitted by the court as a dying declaration of the victim, whereby she accused appellant of committing the rape for which he was tried and convicted, and which was done in the face of, and in direct conflict with, our opinion in the case of Hansel v. Com., 260 Ky. 148, 84 S. W. (2d) 68.

Defendant was convicted in that case of carnally knowing a female under sixteen years of age, an offense denounced in section 1155 of Carroll's Kentucky Statutes, section 435.100, KRS, and which we have held in the cases of Moseley v. Com., 206 Ky. 173, 266 S. W. 1048, and Gilley v. Com., 280 Ky. 306, 133 S. W. (2d) 67, is a degree of the common-law offense of rape. Therefore, the offense involved in the Hansel case is of the same species and a degree of the offense involved in the instant case. In that case the Commonwealth relied chiefly, if not entirely, on an alleged dying declaration of the prosecutrix. In reversing the judgment of conviction we pointed out that in criminal prosecutions dying declarations were not admissible, except in cases of homicide and where the accused defendant in the indictment was being prosecuted for some degree of homi-

729

cide, and not for some subordinate offense that may have remotely resulted in death.

The question was thoroughly gone into in our opinion rendered in that case as it relates to criminal prosecutions, our final conclusion being there expressed (260 Ky. 148, 84 S. W. (2d) 69): "the court should have excluded not only the statements of the deceased as to the defendant having caused her death, but likewise have excluded entirely her statement that he was the only man who had carnally known her, and was the father of the child." There can be no possible distinction drawn differentiating the practice approved in the Hansel opinion and that which should be applied in this case, the facts in each case being substantially identical. Counsel for the Commonwealth in briefing the case in this court, concede as much, saying, "and the same rule, of course, should apply." The trial court, however, appears to have either not been so convinced, or the Hansel case was not called to his attention at the trial. But whatever caused the court to err in admitting the evidence referred to, it is clearly established, not only by the Hansel opinion but by cases and authorities cited therein, that an alleged dying declaration is not competent in any criminal prosecution, except upon a charge of homicide.

The court, therefore, will upon another trial, if one is had, reject all testimony concerning the alleged dying declaration of Thelma Miller.

Wherefore, the judgment is reversed with directions to set it aside, and for proceedings consistent with this opinion.