## HARRISON

v.

## BROTHERHOOD OF RY. & S. S. CLERKS et al.

Court of Appeals of Kentucky.

June 23, 1954.

Rehearing Denied Nov. 5, 1954.

Marshall P. Eldred, Brown, Eldred, Brown & Tachau, Louisville, for appellant.

James W. Stites, Louisville, for appellees.

CLAY, Commissioner.

In this action, appellant sought to compel the Brotherhood of Railway and Steamship Clerks, Freight Handlers, and Express and Station Employees to restore him to membership and office in that union. The original defendants were the Brotherhood, the local lodge of the Brotherhood, to which appellant belonged, and System Board of Adjustment of the Brotherhood for the Louisville & Nashville Railroad Company, on which board appellant held office. Certain individual members of these three bodies were named as defendants in order to bring the associations before the court.

To the petition as originally filed, the appellees filed special and general demurrers. The trial court sustained the special demurrer as to all defendants except the

Brotherhood and overruled the special demurrer as to it. The court then sustained the general demurrer of the Brotherhood to the petition as subsequently amended.

The facts alleged and confessed as true under the general demurrer are that the appellant is a citizen and resident of Louisville, Kentucky, employed by the Louisville & Nashville Railroad Company as a clerk in the office of the Auditor of Disbursements, with seniority dating from March 4, 1925. For a number of years prior to the incidents out of which this litigation arose, appellant had been a member in good standing of the Brotherhood and its local. At the time the controversy arose, he was Chairman of the Local Protective Committee and District Chairman of the System Board of Adjustment. He was also the delegate-elect from the local union to the 1951 convention of the Brotherhood.

By letter dated January 11, 1951, and signed by the Grand President of the Brotherhood, certain charges which we shall later mention were preferred against appellant, and he was removed from all offices and committees held by him in the Brotherhood, pending a hearing to be later conducted. After the hearing, and on March 16, 1951, the Brotherhood, acting through its Grand President, expelled appellant from membership and office in the Brotherhood, the System Board of Adjustment, and the local union. His administrative remedies within the union have been exhausted through unsuccessful appeals to the Grand Executive Council and the Brotherhood's Grand Lodge Convention.

Appellant's expulsion was based upon a letter written by him to Congressman Frank W. Boykin of Alabama and to seven other Congressmen, which it is claimed violates Article 23, Section 9 of the union's constitution. The letter in part recites:

"As a district chairman of the Brotherhood of Railway Clerks representing 257 members transferred here from the States of Alabama, Florida, Georgia, Louisiana, Mississippi, and Tennessee, and above all as a Southerner, I am appealing to you gentlemen to vote and exert your influence against H. R. 7789, which would amend the Railway Labor Act to permit negotiations for a union shop on the railroads."

Article 23, Section 2, Constitution of the Union, provides:

"The Grand President in consultation with the Grand Executive Council, in absence of Convention action, shall determine the policy of the Brotherhood with respect to Federal Legislation."

Section 9 of the same Article provides:

"When such policy has been declared, no member of the Brotherhood shall appear before any legislative committee, Legislature, State, Provincial or Federal executive in opposition to such program or policy in any capacity except that of a private citizen."

Appellant insists that Section 9 is invalid because it denies privileges guaranteed by the Bill of Rights of our Constitution. In the alternative, it is contended that even if the provision in question is constitutional, it was not violated because: (a) the legislative policy of the Brotherhood had not been determined as provided by Section 2; (b) the letters were written in appellant's capacity as a private citizen; (c) the letters did not amount to an appearance as contemplated by Section 9; and (d) assuming the letters amounted to an appearance, such appearance was not before any of the prohibited bodies or individuals.

█ The constitutional question is not entirely free from doubt. The fourth and sixth paragraphs of Section 1 of the Kentucky Constitution guarantee to all citizens the right of freely communicating their thoughts and opinions and of applying to those invested with the power of government for redress of grievances or other proper purposes, by petition, address or remonstrance. Section 9 amounts almost to a denial of these rights. However, this Section expressly excludes the action of a

member when acting as "a private citizen". With this protective provision appellant's right of freely communicating his thoughts and opinions as an individual under Section 1 of our Constitution is not impaired.

■ Appellant asserts that each letter actually was written in his capacity as a private citizen. We think it obvious from a mere reading of the letters that appellant was acting in an official capacity and not as an individual.

Appellant's next contention is that the legislative policy of the Brotherhood had not been declared. Yet the tenor of appellant's letter itself, and particularly a reference to legislation "being sought by the national leaders", indicates he was aware his communication was in opposition to a policy being followed on behalf of the Union. It also appears from the record that the legislative policy of the Brotherhood had theretofore been fixed by convention action specifically referred to in Section 2 of Article 23 of its Constitution.

■ The next point made is that the sending of the letters to eight congressmen did not constitute an "appearance". We believe the word "appear" in Section 9 of Article 23 must be given its ordinarily understood meaning of presenting one's position with respect to a particular matter. Similar to an appearance in court, it may be accomplished without the bodily presence of the individual. Under Section 9 there is no requirement that the appearance be *in person,* and appellant effectively presented himself before the members of the Congress by his written communication.

We are finally confronted with the question of whether or not appellant appeared before a body within the scope of the prohibition. Strictly speaking, he did not present himself to a legislature or to a legislative committee. These consist of organized bodies of men, and we cannot say that appearing before a member of Congress is technically an appearance before a legislative body or committee.

On the other hand, it is apparent on the face of Section 9 that its whole design and purpose was to prevent members of the Brotherhood from using their office to influence legislative or executive action contrary to the policies of the Brotherhood. Under the wording of this particular Section it seems to us that the word "legislature" may fairly be construed to include members of the legislature when the appearance is for the purpose of inducing legislative action. Apparently this was the construction adopted by appellees' authorized officers, and, as pointed out in Norfolk & W. Ry. Co. v. Harris, 260 Ky. 132, 84 S.W.2d 69, the courts should hesitate to upset a labor organization's interpretation of its own Constitution and by-laws. While that case may not be directly in point, it announces a principle that is persuasive here.

Assuming appellant had a property or contractual right which was abrogated by appellee upon his violation of its Constitution, we are of the opinion that the action of appellee was authorized.

The judgment is affirmed.

SIMS, C. J., and DUNCAN, J., dissenting.

DUNCAN, Justice.

I am unable to concur in the majority opinion. I am particularly concerned with the implications of the statement that "the courts should hesitate to upset a labor organization's interpretation of its own Constitution and by-laws." I am not aware of any rule, based upon either precedent or common justice, which requires the courts to follow or to be particularly influenced by such an interpretation when the property rights of a member or members are involved. As I view it, the remedies of a member against a union which denies him some property right to which he is entitled are exactly the same as if he were entitled to the same right or property from a natural person or private corporation which refused to concede it.

The case of Norfolk & Western Ry. Co. v. Harris, 260 Ky. 132, 84 S.W.2d 69, cited in the majority opinion, is not in point. That case merely reiterates the well-recognized principle that the courts will not construe the constitution or by-laws of an unincorporated association so long as the association's interpretation does not trespass upon or destroy contractual or property rights of its members. By entertaining jurisdiction, the majority opinion impliedly recognizes that contractual or property rights are involved in this case. Otherwise we would be powerless to order appellant's restoration to membership in any event.

It is apparent that property rights are involved here, since appellant's loss of membership deprives him of salary and per diem as District Chairman of the System Board of Adjustment and delegate to the Grand Lodge Convention. The expulsion also destroys his rights in a death benefit certificate entitling his beneficiary to the payment of $300 upon his death. In addition to the property rights enumerated above, he had certain other benefits by virtue of Union membership, such as protection and aid in obtaining promotion or preferred jobs in the event vacancies occurred or new jobs were created.

The majority opinion necessarily concedes that an individual member of Congress is neither a "legislature" nor a "legislative committee," and that technically an appearance before a member of Congress is not an appearance before any of the prohibited bodies mentioned in Section 9. However, in deference to the Union's authorized agents, the opinion in effect reads into Section 9 a prohibition which it does not contain.

I do not share the view that there is any rule of deference which requires us to follow the Union's administrative interpretation when such construction destroys property or contractual rights of a member. I respectfully dissent. I am authorized to say that Chief Justice SIMS joins in this dissent.