KENTUCKY HIGH SCHOOL ATHLETIC
ASSOCIATION, Appellant,

v.

HOPKINS COUNTY BOARD OF EDUCA-
TION and its Individual Board Members,
namely, Walter Prowse, Elbert Rhodes,
Richard Harris, Bill Brown, Brandon
Nuttall, Robert Edmiston, Oda Inglis,
and Patrick L. McNeil, Superintendent,
Hopkins County Schools, Floyd Brown,
Jr., Principal, Madisonville-North Hop-
kins High School, and James G. Meyer,
Head Football Coach, Madisonville-North
Hopkins High School, Lige Erwin Sha-
dowen and Todd Lige Shadowen, Appel-
lees.

Court of Appeals of Kentucky.

June 3, 1977.

Phillip D. Scott, Lexington, for appellant.

Jerry P. Rhoads, William R. Thomas, Madisonville, for appellees.

Before MARTIN, C. J., and PARK and VANCE, JJ.

PARK, Judge.

The Kentucky High School Athletic Association (the Association) appeals from a final judgment of the Hopkins Circuit Court which granted a permanent injunction. This case arose out of a dispute over the eligibility of the appellee, Todd Lige Shadowen, to participate in interscholastic athletic events during the 1976–77 school year as a student at Madisonville-North Hopkins High School (the School). The Association was permanently enjoined from declaring Shadowen ineligible and from imposing any sanctions against the School based upon Shadowen's participation in any interscholastic athletic events at the School. This appeal raises serious questions of substantive and procedural law.

The Association is a voluntary unincorporated association composed of accredited secondary schools in the state of Kentucky. The Association has approximately 350 public, parochial, and private school members, including Madisonville-North Hopkins High School. By its membership in the Association, the School has voluntarily agreed to the constitution, bylaws and rules of the Association. Among the rules adopted by the Association are rules respecting the eligibility of students to compete in interscholastic events. The rule in question in this case, By-law 6, Transfer, provides:

"SEC. 1. TRANSFER OF FIRST TEAM COMPETITOR.

Any student who has represented a secondary school in a first team game in any sport and who changes schools with or without a corresponding change in the residence of his parents shall be ineligible for thirty-six school weeks. If there is a corresponding change in the residence of the parents, the commissioner may waive

the penalty in any case where there is evident injustice."

It is the position of the Association that Shadowen is ineligible under this rule.

Shadowen's parents were divorced by a judgment of the Lyon Circuit Court in September 1973. Under the terms of the divorce judgment, legal custody of Todd Lige Shadowen was granted to his mother. Sometime after the divorce, Shadowen accompanied his mother to a new residence in Sturgis, Union County, Kentucky. Shadowen was enrolled in the Union County School System during the 1974–75 and 1975–76 school years. During the 1975–76 school year, Shadowen was a first team performer in sports at the Union County High School.

On or about May 28, 1976, with the agreement of his mother, Shadowen took up residence with his father and step-mother in Hopkins County. By an order of the Lyon Circuit Court entered September 1, 1976, nunc pro tunc as of June 8, 1976, custody of Shadowen was transferred from his mother to his father, and the father became obligated to make monthly support payments directly to young Shadowen. On June 9, 1976, Shadowen enrolled at the School and has sought to compete in interscholastic sports at the School since that date.

On June 23, 1976, the Association's Commissioner informed the principal of the Madisonville-North Hopkins High School by letter that Shadowen was eligible to participate in interscholastic athletics. On August 16, 1976, the Association's Commissioner wrote the school principal a second letter which stated:

"The Commissioner may waive By-Law 6 only in cases where there is a corresponding change of address on the part of the parent. I am now informed that Todd was living with his mother in Sturgis while attending Union County High School and she did not move to Madisonville.

Since there was no change of residence on the part of the mother, I have no authority to declare Todd eligible. Therefore, I must rescind my decision of June 23, 1976, and state that Todd is ineligible to represent Madisonville-North Hopkins High School in athletics until he

has been enrolled there for a period of thirty-six weeks."

Following the institution of this action, Shadowen at the trial court's direction petitioned the Association for a rehearing on the question of his eligibility. By a letter dated September 22, 1976, Shadowen was informed that the appeals committee of the board of control had again held Shadowen to be ineligible to compete in athletic events during the current school year.

Shadowen moved his residence from Union County with his mother to Hopkins County with his father for personal reasons unrelated to his participation in interscholastic sports events. Shadowen's transfer was free from any motive related to his athletic ability. Shadowen was not recruited by the School or anyone on its behalf. The record indicates that he wished to move to Hopkins County to live with his father so that he could marry. His mother was opposed to the marriage. Shadowen did marry Nina Simpson on June 12, 1976, but they lived together for only a few weeks in Hopkins County. Since their separation, Shadowen has lived with his father in Hopkins County.

█ As a general rule, courts will not interfere with the internal affairs of voluntary associations. In the absence of mistake, fraud, collusion or arbitrariness, the decisions of the governing body of an association will be accepted by the courts as conclusive. 6 Am.Jur.2d Associations and Clubs § 27. Voluntary associations may adopt reasonable bylaws and rules which will be deemed valid and binding upon the members of the association unless the by-law or rule violates some law or public policy. *Louisville Board of Fire Underwriters v. Johnson,* 133 Ky. 797, 119 S.W. 153 (1909). It is not the responsibility of the courts to inquire into the expediency, practicability or wisdom of the bylaws and regulations of voluntary associations. *Norfolk & W. Ry. Co. v. Harris,* 260 Ky. 132, 84 S.W.2d 69 (1935). These general principles are equally applicable to cases involving state high school athletic associations. *State ex rel. Ohio High School Athletic Association v. Judges of Court of Common Pleas,* 173 Ohio St. 239, 181 N.E.2d 261 (1962). Furthermore, the courts will not substitute their interpretation of the bylaws of a voluntary association for the interpretation placed upon those bylaws by the voluntary association itself so long as that interpretation is fair and reasonable. *Lang v. International Photo Engravers Union of North America,* Ky., 343 S.W.2d 385 (1960); *Harrison v. Brotherhood of Ry. and S. S. Clerks,* Ky., 271 S.W.2d 852 (1954).

Having these principles in mind, this court must answer two questions. First, is the transfer rule incorporated in By-law 6 a valid rule and regulation? If By-law 6 is valid, is the interpretation placed upon that rule in *Shadowen's* case a reasonable interpretation? We answer both of these questions in the affirmative.

█ The transfer rule contained in By-law 6 is a valid regulation intended to eliminate the pernicious practice of recruiting high school athletes. In holding that a similar transfer rule was not arbitrary, the Louisiana appellate court stated in *Marino v. Waters,* La.App., 220 So.2d 802 at 806 (1969):

"The transfer rule of the Louisiana High School Athletic Association has been in effect since around 1920 when the youthful association moved to eliminate the recruiting of high school athletes. The transfer rule, in emphasizing the residence of the parents of the student, is by no means capricious and arbitrary. While it is a rational rule which has apparently produced good results, it is not for this Court to pass upon the merits of this particular rule. This is a matter to be determined by the members of the Association, and it is beyond the power of this Court to impose its ideas of what the rules of the Association should be."

This holding was expressly approved by the Supreme Court of Louisiana in *Chabert v. Louisiana High School Athletic Association,* La., 323 So.2d 774 (1975). See also *Paschal v. Perdue,* 320 F.Supp. 1274 (S.D.Fla.1970); *State ex rel. National Junior College Athletic Association v. Luten,* Mo.App., 492 S.W.2d 404 (1973), approved in *State ex rel. Missouri State High School Activities Association v. Schoenlaub,* Mo., 507 S.W.2d 354 (1974).

Shadowen has not argued that the transfer rule set forth in By-law 6 is completely invalid. On behalf of Shadowen, it is argued that the Association has acted arbitrarily in applying the rule to the particular circumstances of his case. The trial court agreed with Shadowen, relying heavily upon the fact that there was no evidence of recruiting or other improper. influence upon Shadowen to cause him to transfer to the Madisonville-North Hopkins High School. In *Bruce v. South Carolina High School League,* 258 S.C. 546, 189 S.E.2d 817 (1972), the Supreme Court of South Carolina upheld the validity of the South Carolina transfer rule against a similar argument. The court stated:

"Respondents further charge that the rule is arbitrary in its application to them, because it was adopted to prevent the recruiting of athletes and no provision is made for review in individual cases, so as to grant relief from its provisions where, as in this case, the transfer is voluntarily made without the prohibited element of inducement.

"We are here concerned with the enforcement of a rule adopted by members of a voluntary association to govern competition among themselves in athletic events. The rule, to which the members agreed to be bound, clearly makes students, such as respondent, who transfer from one school to another without a bona fide change of residence ineligible to engage in interscholastic athletics for a period of one year. There are no exceptions or qualifications, nor is any discretion vested in League officials in its application. It applies to all schools and students alike.

"In contending that, since they were not recruited and the rule was designed to prevent recruiting, it should not apply to them, respondents confuse the reasons which prompted the adoption of the rule with the method adopted to accomplish the desired goal. Prohibitive administrative difficulties, as well as others, resulting from a determination in each case of the reason prompting the transfer could have properly influenced the member schools to decide that the best method to accomplish the elimination of the evil of recruiting was to bind themselves to adherence to a rule without exceptions or qualifications. The merits of such a rule or the wisdom of its adoption are not for the courts to determine." 189 S.E.2d at 819.

We agree with that statement of the law.

Under By-law 6, the Commissioner may waive the transfer rule "where there is evident injustice" if there is a corresponding change in the residence of the student's parents. If there is no change in the residence of the parents, the Commissioner is granted no discretion of any kind. Rather than adopt a procedure which would require a subjective inquiry into the motives of every transfer, the Association has adopted an objective standard. If there has not been a change of residence by the parents, the transfer rule cannot be waived. If a student transfers from one school to another because of a change in the residence of his parents, the transfer is involuntary on the part of the student. The student has no real choice but to follow the change of residence of the parents. The Association did not act arbitrarily in applying the same rule to parents who were divorced and separated even if there was a change in legal custody. If there is no change in the residence of either parent, there is always a real question regarding the motive for the change in custody. In the present case, Shadowen was not compelled to change his residence from Union County to Hopkins County because of some reason beyond his control. The change of custody was the result of Shadowen's own wishes. There was nothing involuntary in Shadowen's change of residence from Union County to Hopkins County. Therefore, the Association did not act arbitrarily in applying the transfer rule to Shadowen.

In *Sturrup v. Mahan,* 261 Ind. 463, 305 N.E.2d 877 (1974), the Indiana Supreme Court did hold the application of a transfer rule to a particular student to be unreasonable and arbitrary. This case can be distinguished on its facts. The Indiana Court found that the student's transfer was necessitated by unavoidable circumstances unrelated to recruiting or any improper influence. In the present case, there were no unavoidable circumstances which necessitated Shadowen's move from Union County

to Hopkins County. Not only is the *Sturr-up* case distinguishable on its facts, but this court finds itself in agreement with the dissenting opinion of Chief Justice Arterburn which stated:

"Too many courts and judges feel that they know how to run other people's business better than they do. I frankly admit my ignorance as to how high school athletics should be operated and the problems involved therein. As long as a rule, law or regulation appears to make a reasonable classification to obtain a lawful objective or result it should not be struck down. Here the objective of the rule that does not permit a student to jump from one school to the other and participate in competitive athletics without his parents moving with him is meritorious and appears to me to be reasonable and does not involve a 'suspect classification.'" 305 N.E.2d at 882.

No constitutional issue is raised in this case. The transfer rule is not based upon any "suspect classification." It does not represent any improper discrimination against any group of persons. Participation in interscholastic athletics is not a constitutionally protected civil right. *Albach v. Odle,* 531 F.2d 983 (10th Cir. 1976); *Oklahoma High School Athletic Association v. Bray,* 321 F.2d 269 (10th Cir. 1963). Furthermore, such activity does not become constitutionally protected merely because the student athlete loses the opportunity to play in tournaments or to compete for athletic scholarships at the college level. *Parish v. National Collegiate Athletic Association,* 506 F.2d 1028 (5th Cir. 1975); *Colorado Seminary v. National Collegiate Athletic Association,* 417 F.Supp. 885 (D.Colo.1976).

For the foregoing reasons, the judgment of the circuit court permanently enjoining the Association from declaring Shadowen ineligible to participate in interscholastic athletic activities during the 1976–77 school year must be reversed. In addition to the substantive issues discussed above, there are important procedural problems raised by this appeal.

■ The original complaint was filed by Shadowen, through his father as next friend, against the Hopkins County Board of Education (the Board), its individual members, the county school superintendent, and the principal and head football coach at the School. The Association was *not* made a party to the original complaint. Shadowen sought to enjoin the Board from denying him the right to participate in interscholastic athletic events at the School during the 1976–77 school year. The complaint specifically alleged that the Board was acting pursuant to a ruling of the Association that Shadowen was ineligible for the current school year. Following a hearing, the circuit court granted a temporary injunction enjoining the Board and the School from denying Shadowen the right to participate in interscholastic athletic events. It was error to grant the temporary injunction without making the Association a party.

The complaint on its face stated that the Association was claiming an interest in the question of Shadowen's eligibility. The Association had declared Shadowen ineligible and was directing the Board not to play Shadowen. On the other hand, the circuit court was upholding Shadowen's eligibility and directing the Board to permit Shadowen to participate in interscholastic athletics. The Board was subject to a substantial risk of incurring inconsistent obligations so long as the Association was not a party to the proceeding. The Association was subject to service of process, and it could have been made a party to the suit. Therefore, under CR 19.01 it was mandatory that the Association be made a party to the action.

Normally, a trial court can rely upon the parties before the court to raise the question of joinder of necessary parties. However, in this case it should have been readily apparent that the original defendants would not be displeased with an injunction requiring them to permit Shadowen to continue participating in the interscholastic athletic activities of the School, particularly if the injunction could be used as a defense to sanctions by the Association.

Being aware of the situation that was developing, the Association filed a motion to intervene which was granted by the circuit court. After filing its intervening complaint, the Association filed a motion to dissolve the temporary injunction. For some reason which does not appear of rec-

ord, an order was never entered either granting or denying the motion to dissolve the temporary injunction. Having failed to secure a ruling on its motion to dissolve the temporary injunction, the Association assumed that it was not entitled to any interlocutory relief under CR 65.07. The Association attempted to extricate itself from this procedural quagmire by suspending the School from further participation in the Association because the school had continued to play Shadowen in athletic events in violation of the Association ruling that Shadowen was ineligible.

The circuit court quite naturally concluded that the School should not be penalized for complying with the court's temporary injunction. The circuit court granted a second temporary injunction which enjoined the Association from enforcing any sanctions against the School. Having for the first time an order which it could appeal, the Association sought interlocutory relief pursuant to CR 65.07. The Supreme Court entered an order dissolving the second temporary injunction, but that order of the Supreme Court did not affect the original temporary injunction granted to Shadowen against the Board and the School.

Further hearings were held in the circuit court. After holding that the action of the association declaring Shadowen ineligible was arbitrary, the circuit court enjoined the Association from interfering with Shadowen's participation on the school's basketball team. Specifically, the Association was enjoined from preventing Shadowen and the School's basketball team from participating in the district and regional basketball tournaments. Again, the orders of the circuit court affected persons who were not parties to the action. No recognition was given to the rights and interests of other teams that might be competing with the School during regular season and tournament play.

This case demonstrates that courts are a very poor place in which to conduct interscholastic athletic events, especially because this type of litigation is most likely to arise at playoff or tournament time. If an injunction or restraining order is granted erroneously, it will be practically impossible to unscramble the tournament results to reflect the ultimate outcome of the case. In almost every instance, the possible benefits flowing from a temporary restraining order or injunction will be far outweighed by the potential detriment to the Association, as well as to its member schools who are not before the court. Only in rare instances would the granting of the temporary restraining order or temporary injunction be a proper remedy.

In one respect, the judgment of the circuit court must be affirmed. The circuit court properly enjoined the Association from imposing sanctions against the School for playing Shadowen in compliance with the orders of the court. Even though the temporary injunction was improperly granted, it was the duty of the School to comply with the temporary injunction until it was dissolved. *Karr v. Kentucky State Board of Dental Examiners,* Ky., 469 S.W.2d 545 (1971). There is no question of collusion. For a time, the Association was represented by the same attorney as represented the School and the Board.

The judgment of the circuit court is reversed except for that portion of the judgment enjoining the Association from imposing sanctions against the School for playing Shadowen in conformity with the temporary injunction.

All concur.