**KENTUCKY HIGH SCHOOL ATHLETIC ASSOCIATION, Appellant,**

v.

**Kevin JACKSON, an infant, by his mother and next friend, Peggy Jackson Carter, Appellee.**

Court of Appeals of Kentucky.

July 21, 1978.

W. V. Alford, Jr., McDonald, Alford & Roszell, Lexington, for appellant.

William L. Rose, Williamsburg, Cathy C. Lowe, Lexington, for appellee.

Before PARK, WHITE and WILHOIT, JJ.

PARK, Judge.

The defendant-appellant, Kentucky High School Athletic Association (KHSAA), appeals from a final judgment of the Whitley Circuit Court which permanently enjoined KHSAA from declaring the plaintiff-appellee, Kevin Jackson, ineligible to participate in interscholastic athletic events at the Williamsburg High School during the 1977–78 school year. KHSAA had declared Jackson ineligible under section 1 of bylaw 6, Transfer of First Team Competitor, which is a part of the rules of the association agreed to by its member schools. The circuit court found that KHSAA's application of this rule to Jackson was unfair, unjust and arbitrary.

The rule in question provides:

SEC. 1. TRANSFER OF FIRST TEAM COMPETITOR.

Any student who has represented a secondary school in a first team game in any sport and who changes schools with or without a corresponding change in the residence of this parents shall be ineligible for thirty-six school weeks. If there is a corresponding change in the residence of the parents, the commissioner may waive the penalty in any case where there is evident injustice.

The general validity of this rule was upheld by this court in *Kentucky High School Athletic Assoc. v. Hopkins County Board of Education,* Ky.App., 552 S.W.2d 685 (1977). Consequently, the only issue on appeal is whether KHSAA acted arbitrarily in applying this transfer rule to Jackson.

The record on appeal does not contain a transcript of the evidentiary hearings before the circuit court. Under these circumstances, the parties agree that the trial judge's findings of fact must be accepted as correct on appeal.

Harold and Peggy Jackson were the parents of two children, Kevin and a younger sister Robin. All of the Jacksons lived at Rockholds in Whitley County until August 31, 1974, when a joint petition for the dissolution of the marriage was filed. Attached to this joint petition was an executed settlement agreement which provided that Peggy Jackson was to have custody of both children. Mr. and Mrs. Jackson reconciled and continued to live together as man and wife until September 1976, at which time they separated for the last time. On November 16, 1976, the circuit court entered a final decree dissolving the marriage and incorporating the earlier settlement agreement giving Peggy Jackson custody of both children.

At the time of the final separation in September 1976, Kevin and Robin were both enrolled in the county school system. Following the separation, Mrs. Jackson moved to a trailer park located in the Highland Park section within the corporate limits of the city of Williamsburg. Not wanting to remove the two children from the county school system in mid-year, Mrs. Jackson entered into an oral agreement with Mr. Jackson that the two children would continue to live with him until the end of the school year. Kevin participated in a first team basketball game while enrolled at Whitley County High School during the 1976–77 school year.

Immediately following the close of the school year in the spring of 1977, Kevin and Robin went to live with their mother at her home in Williamsburg. On July 16, 1977, Peggy Jackson married Darrell Carter. Mr. and Mrs. Carter, Kevin and Robin moved together to the home of Mrs. Carter's sister at Woodbine in Whitley County where they all resided until August 14, 1977. At that time, the four moved to their present residence on Ninth Street within the city limits of Williamsburg. Mrs. Carter enrolled Kevin and Robin in the Williamsburg city school system, and Kevin has attended Williamsburg High School during the 1977–78 school year.

The trial judge found that there was no evidence of recruiting, gifts or other illegal inducements to cause Kevin to move from the county school district into the city school district. The trial judge also found that the move was involuntary on Kevin's part and was the sole decision of his mother who had legal custody of Kevin under the circuit court decree. Nevertheless, KHSAA took the position that the transfer rule could not be waived because Kevin changed schools without a "corresponding change" in the residence of his custodial parent. Although acknowledging that Kevin and his mother both had moved from Rockholds to Williamsburg, KHSAA relies upon the fact that Kevin did not move at the same time as his mother. In effect, KHSAA would interpret the transfer rule to prohibit waiver of the rule unless the change of schools by the student was accompanied by a "corresponding and simultaneous change" of residence of the custodial parent.

As this court held in *Kentucky High School Athletic Association v. Hopkins County Board of Education, supra,* courts will not substitute their interpretation of an association's bylaws for the interpretation placed upon those bylaws by the association

itself. However, that rule is applicable only so long as the association's interpretation is fair and reasonable. Applying the standards set forth in the *Hopkins County Board of Education* case, we conclude that it is unfair and unreasonable to require that the student's change of school be simultaneous with the custodial parent's change of residence.

■ The transfer rule is intended to eliminate the pernicious practice of recruiting high school athletes. When a student changes schools with a "corresponding change" in the residence of the custodial parent, there is an objective indication that the change of school was not the result of recruiting. The objective indication that recruiting was not the reason for the change of schools provides a basis for waiving the transfer rule in cases of "evident injustice." When the custodial parent's change of residence precedes, rather than coincides with, the change of schools, there is even less reason to suspect recruiting as the motive for the change of schools. KHSAA's interpretation of the rule would encourage parents to pull their children out of school in the middle of the school year whenever the parents are changing residence. A reasonable interpretation of the rule would leave parents free to decide that their children's education would be best served by avoiding a mid-year change of schools.

The facts of this case are easily distinguished from the facts in the *Hopkins County Board of Education* case in which the application of the transfer rule was upheld. In that case, there was a change of custody but no change of residence by either parent. Moreover, the change of custody was the result of the student's own wishes so that his change of residence from one school district to another could not be said to have been involuntary. In this case, Kevin's mother had legal custody of both children at all times after the final separation. As the custodial parent, it was her decision that both children follow her to Williamsburg at the end of the school year and that they move with her and her husband on two occasions during the summer of 1977. We agree with the judgment of the circuit judge that KHSAA acted arbitrarily when it applied the transfer rule to Kevin Jackson.

■ KHSAA argues that the complaint is fatally defective because it fails to allege that the actions of KHSAA were "arbitrary." This argument is specious. The complaint does allege that the actions of KHSAA were "capricious." Even more important, the complaint sets forth the basic facts of the case and the relief sought. The absence of the word "arbitrary" does not mean that the complaint does not allege arbitrary action on the part of KHSAA. *Prewitt v. Clayton*, 21 Ky. (5 T.B.Mon.) 4 (1827).

■ KHSAA argues that the decision in this case will open the floodgates to a torrent of litigation. We disagree. The officials of KHSAA are necessarily vested with substantial discretion in the administration of the interscholastic athletic programs within the State of Kentucky. The courts will not interfere with the exercise of such discretionary power in the absence of a showing that the association acted arbitrarily or denied the affected parties an opportunity to be heard. The record on this appeal fails to establish that any proceeding before the association provided a reasonable basis for declaring Kevin Jackson ineligible. In fact, the record reflects that there was no exercise of discretion. As the trial judge's opinion states:

> It seems strange that the Commissioner testified that in its entire history the K.H.S.A.A. has never waived the transfer rule although the Board of Control may have on two or three occasions. Why have a waiver provision in your by-laws if you are never going to exercise it?

Under these circumstances, the judgment of the circuit court did not constitute an unreasonable interference with the internal affairs of KHSAA.

We also note the passage of Senate Bill No. 60 at the last session of the legislature. 1978 Ky.Acts, ch. 60. Under the statute,

the state board of elementary and secondary education is now vested with management and control of interscholastic athletics. However, the statute further provides:

The board may designate an organization or agency to manage interscholastic athletics in the common schools, provided that the rules, regulations and by-laws of any organization or agency designated shall be approved by the board, and provided further that the board shall adopt regulations providing for the appeal to the board of any decisions made by the designated managing organization or agency.

If a due process hearing will be afforded under this statute, the role of the courts will be extremely limited in matters involving interscholastic athletics. *See American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Com'n,* Ky., 379 S.W.2d 450 (1964); *Morris v. City of Catlettsburg,* Ky., 437 S.W.2d 753 (1969); *City of Louisville v. McDonald,* Ky., 470 S.W.2d 173 (1971).

The judgment of the circuit court is affirmed,

All concur.